# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## MONROE DIVISION

| | |
|---|---|
| JOSE PATRICIO-MORALES | CIVIL ACTION NO. 26-0877 |
| | SECTION P |
| VS. | |
| | JUDGE JAMES D. CAIN, JR. |
| TIMOTHY DUCOTE, ET AL. | MAG. JUDGE KAYLA D. MCCLUSKY |

## REPORT AND RECOMMENDATION

Petitioner Jose Patricio-Morales,[1] a detainee in the custody of the Department of Homeland Security ("DHS") and the Bureau of Immigration and Customs Enforcement ("ICE"), petitions for a writ of habeas corpus under 28 U.S.C. § 2241.[2]  Respondents oppose the petition. [doc. # 10].  For reasons below, the Court should deny the petition.

## Background

Petitioner is a citizen of Mexico.  He entered the United States of America without inspection in 1997.  [doc. # 1, p. 1].  He has four "U.S. Citizen children."  *Id.* at 5.  He states that he has no criminal record, he has strong ties to his community, he has family in this country who rely on him, and he has fully complied with law enforcement.  *Id.* at 5, 8.

On October 24, 2025, ICE detained Petitioner, and DHS issued Petitioner a Notice to Appear.  [doc. #s 1, pp. 2, 5; 10-1, p. 1].

---

[1] Petitioner's "A Number" is 221-451-213.

[2] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

On December 29, 2025, an immigration judge ordered Petitioner removed to Mexico. [doc. # 10-3]. Petitioner appealed to the Board of Immigration Appeals ("BIA"); his appeal is pending. [doc. # 1, p. 6].

Petitioner filed this proceeding on March 19, 2026. He first claims that the Government violated his right to due process when it denied his bond request, denied his Motion for Termination and motion for administrative closure, cancelled his Master Hearing, gave him only "ten days to prepare for his Individual Hearing which required a submission of nearly 200 pages of evidence and testimony from fifteen (15) witnesses[,]" and did not give him the opportunity to present his claim for asylum. [doc. # 1, pp. 11-12].

Next, Petitioner claims that he is entitled to habeas corpus under the Administrative Procedure Act ("APA"). [doc. # 1, p. 12]. He claims in part: "Respondents actions were arbitrary and capricious when he was subjected to railroading and a circumvention of the legal removal process, thus constituting harm when his Master Hearing was cancelled, he was only given ten days to prepare for his Individual Hearing which required a submission of nearly 200 pages of evidence and testimony from fifteen (15) witnesses, and he was not given the opportunity to present his claim for Asylum." *Id.* at 12-13.

Respondents opposed the petition on April 15, 2026. [doc. # 10]. They primarily argue: "The Fifth Circuit has squarely held that aliens who are 'applicants for admission' and cannot show they are 'clearly and beyond a doubt entitled to be admitted' are subject to mandatory detention without bond under § 1225(b)(2)(A). *Buenrostro-Mendez v. Bondi*, --- F.4th ---, 2026 WL 323330, at *1– 10 (5th Cir. Feb. 6, 2026). That holding forecloses any claim to release or a bond hearing as a matter of law." *Id.* at 2. They also argue that "no procedural due process right to a bond hearing exists." *Id.* at 3.

Petitioner filed a reply on April 22, 2026. [doc. # 11]. He emphasizes that he does not seek release on bond, rather he seeks only release from detention. *Id.* at 3.

## Law and Analysis

### I. Denied Bond

Petitioner claims that his requests for bond were denied on grounds that the immigration court lacked jurisdiction and that Petitioner was a flight risk. [doc. # 1, pp. 2, 6]. While he claims that he was denied bond, he states in his reply that he does not seek bond for relief in this proceeding. [doc. # 11, p. 3].

Regardless of whether Petitioner seeks bond for relief, *Buenrostro-Mendez v. Bondi*, No. 25-20496, 2026 WL 323330 (5th Cir. Feb. 6, 2026), governs his claim.

On February 6, 2026, the Fifth Circuit Court of Appeals held that aliens who have not been admitted may be detained without bond hearings under 8 U.S.C. § 1225(b)(2)(A) even when they have been present in the United States for many years. *Buenrostro-Mendez*, 166 F. 4th at 502. In reaching its conclusion, the court analyzed the meaning of "seeking admission" and "applicants for admission" in 8 U.S.C. § 1225. *Id.* The court concluded that "applicants for admission," which includes all aliens who have not previously been admitted to the United States, are necessarily "seeking admission" and, therefore, subject to mandatory detention under § 1225(b)(2)(A). *Id.*

Here, Petitioner is detained under 8 U.S.C. § 1225. Under 8 U.S.C. § 1225(b)(1)(B)(ii) (emphasis added), "If the officer determines at the time of the interview that an alien has a credible fear of persecution (within the meaning of clause (v)), the alien *shall be detained* for further consideration of the application for asylum." Plainly, Section 1225 does not authorize

release on bond.  *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018).  Petitioner is (and was) not statutorily entitled to bond.

Out of caution, the undersigned addresses Petitioner's cursory suggestion that "Maldonado Bautista v. Santacruz, 2025 U.S. Dist. LEXIS 233085, 2025 WL 3289861" bolsters his claim.  [doc. # 1, p. 8].  He alleges: "A challenge to the current DHS policy on bond jurisdiction was filed with the Central District Court of California (Maldonado Bautista v. Santacruz, 2025 U.S. Dist. LEXIS 233085, 2025 WL 3289861), prior to the current BIA decision in Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025).  The final decision in Bautista argues that Hurtado is effectively overruled."  *Id.*

In *Bautista*, the court found that persons like Petitioner meeting certain identified requirements are "Bond Eligible."  However, one district judge in this district previously rejected this conclusion.  *See Mendoza v. Rice,* Civil Action No. 1:26-0058 (W.D. La. Jan. 14, 2026) [doc. #6, pp. 10-19] (Doughty, J.).  Another district judge likewise opined:

> [T]he reasoning undergirding [*Bautista*] was expressly rejected by a panel of the Fifth Circuit.  *Compare Buenrostro-Mendez*, 166 F.4th at 502–08 *with Guerrero-Orellana*, No. 1:25-cv-12664-PBS, at ECF No. 112 *and Maldonado Bautista*, No. 5:25-cv-1873-SSS, at ECF No. 116. Because Petitioner is an inadmissible alien who is an "applicant for admission," § 1225(b) applies to her; therefore, she "shall be detained for a proceeding under [§] 1229a." 8 U.S.C. § 1225(b)(2)(A).

*Ramirez v. Harper, et al.*, No. CV 26-386 SEC P, 2026 WL 1067923, at *1 (W.D. La. Apr. 20, 2026).  The undersigned agrees with the judges' opinions above.

Finally, Petitioner claims that the bond denials violated his right to due process.  [doc. # 11, p. 5].  In *Dzheison Ford v. Timothy Ducote, et al.*, 3:20-cv-1170, Doc. 19, (W.D. La. Nov. 2, 2020), the district judge opined in pertinent part:

> In *Department of Homeland Security v. Thuraissigiam*, 140 S.Ct. 1959 (2020), a Sri Lankan national was stopped 25 yards after crossing the southern border

4

of the United States.  He was detained for expedited removal.  An asylum officer rejected his credible fear claim.  Thuraissigiam then filed a federal habeas corpus petition in which he, for the first time, asserted a fear of persecution and requested a new opportunity to apply for asylum.  In reversing the appellate court, the Supreme Court found the detention did not violate the Due Process Clause.  Although not a case of unreasonable detention, the case is important as to Due Process rights for illegal aliens.  Citing *Nishimare Ekin v. United States*, 142 U.S. 651, 660 (1892), the Court held that with regard to foreigners who have never been naturalized or acquired any domicile or residence in the United States, "'the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law.'"  140 S. Ct. at 1977.

In *Demore v. Kim*, 538 U.S. 510 (2003), Kim had entered the United States lawfully and had resided in this country for over 10 years before committing a crime, which made him deportable. Like Ford, Kim argued his mandatory detention violated due process when no determination had been made whether he posed a danger to society or a flight risk. Also, like Ford, Kim asked for an individualized bond hearing which was not authorized under the statute.  Both the District Court and the Court of Appeals for the Ninth Circuit found the detention without a bond hearing violated Kim's due process rights.  In reversing the District Court and Ninth Circuit, the Supreme Court held detention during these proceedings did not violate Kim's due process rights.

Also, like Ford, Kim relied on the case of *Zadvydas v. Davis*, 533 U.S. 678 (2001).  In *Zadvydas*, two aliens were held pending removal after final order of deportation.  However, no country would take them, so their detention continued for years beyond the 90–day removal period of 8 U.S.C. §1231(a).  The Supreme Court held that "once removal is no longer reasonably foreseeable, continued detention is not authorized by the statute." *Id*. at 699. The Supreme Court concluded that six months was a presumptively reasonable period of detention, beyond the removal period, to remove aliens ordered deported.  *Id*. at 702.

The *Kim* Court held that *Zadvydas* was materially different because the detention of the aliens in *Zadvydas* was "indefinite" and "potentially permanent." Therefore, the correct standard to apply is to determine whether Ford's detention is "indefinite" or "potentially permanent."

Ford's detention is not "indefinite" or "potentially permanent."  Ford's detention ends when the removal proceedings end. Ford's focus on "unreasonable detention" is incorrect. As long as Ford's detention is not "indefinite" nor "potentially permanent," Ford's due process rights are not violated. See also *Jennings v. Rodriguez*, 138 S.Ct. 830 (2018).

Here, Petitioner is not constitutionally entitled to bond. *See Demore*, 538 U.S. at 531 ("Detention during removal proceedings is a constitutionally permissible part of that process.").[3] As in *Ford*, Petitioner's detention is not indefinite or potentially permanent. An immigration judge ordered him removed on December 29, 2025, and Petitioner thereafter chose to appeal, which will likely extend his detention until the BIA decides his appeal. Petitioner's detention will likely end (i) when his order of removal becomes final (if the BIA affirms the order of removal or dismisses Petitioner's appeal) and the Government removes him or (ii) if the BIA rules in Petitioner's favor.

The Court should dismiss Petitioner's claim.

## II. Due Process

Petitioner claims that the Government violated his right to due process when it denied his Motion for Termination and motion for administrative closure, cancelled his Master Hearing, gave him only "ten days to prepare for his Individual Hearing which required a submission of nearly 200 pages of evidence and testimony from fifteen (15) witnesses[,]" and did not give him the opportunity to present his claim for asylum. [doc. # 1, pp. 11-12]. Petitioner relatedly claims that he is entitled to habeas corpus under the Administrative Procedure Act ("APA"), arguing, "Respondents actions were arbitrary and capricious when he was subjected to railroading and a circumvention of the legal removal process, thus constituting harm when his Master Hearing was cancelled, he was only given ten days to prepare for his Individual Hearing which required a submission of nearly 200 pages of evidence and testimony from fifteen (15) witnesses, and he was not given the opportunity to present his claim for Asylum."

---

[3] *See also Romero v. Tate*, 2026 WL 1067566, at *1 (S.D. Tex. Apr. 20, 2026); *Bekboev v. Vergara,* 2026 WL 1011244, at *1 (S.D. Miss. Apr. 14, 2026); *Mlaih v. Noem*, 2026 WL 787536, at *4 (N.D. Tex. Mar. 19, 2026).

The Court lacks jurisdiction over these claims.  Under 8 U.S.C. § 1252(a)(5) (emphasis added):

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, *a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered* or issued under any provision of this chapter, except as provided in subsection (e). For purposes of this chapter, in every provision that limits or eliminates judicial review or jurisdiction to review, the terms "judicial review" and "jurisdiction to review" include habeas corpus review pursuant to section 2241 of Title 28, or any other habeas corpus provision, sections 1361 and 1651 of such title, and review pursuant to any other provision of law (statutory or nonstatutory).

Petitioner challenges an alleged lack of procedure and process in his removal proceedings.  He plainly challenges his removal order, arguing that it is invalid because (i) he lacked adequate notice to submit evidence and secure witnesses, (ii) he was never given a master hearing, (iii) his motion to terminate removal proceedings was denied, and (iv) he lacked an opportunity to claim asylum.  *See Castillo-Perales v. Holder*, 411 F. App'x 695, 696 (5th Cir. 2011) ("The Real ID Act stripped the district courts of jurisdiction over § 2241 petitions attacking removal orders."); *Vargas v. United States Dep't of Homeland Sec.*, 2017 WL 962420, at *3 (W.D. La. Mar. 10, 2017) ("Vargas contends ICE violated various procedural and substantive requirements of the Fifth Amendment and the Immigration and Nationality Act, 66 Stat. 163, 8 U.S.C. § 1101, *et seq.*, in the conduct of her removal proceedings.  Again, this Court does not have jurisdiction to consider Vargas's claims that challenge her removal order.").

For example, with respect to his claim that he lacked adequate notice to submit evidence in support of his arguments against removal, courts routinely find that they lack supervision over such claims.  *See Achala v. Sessions*, 2017 WL 7688384, at *1 (S.D. Tex. Dec. 29, 2017) ("Petitioner appears to raise other issues regarding his removal order and lack of notice of an

immigration hearing.  To the extent that Petitioner is challenging his removal order itself, this Court lacks jurisdiction to consider those claims."); *Ovalle v. Chertoff*, 546 F. Supp. 2d 333, 335 (W.D. La. 2008) (holding, where the petitioner claimed "that his *in absentia* removal order [was] invalid because the Immigration Court in California ordered petitioner to be deported without providing petitioner with proper notice in violation of his right to due process[,]" that the court lacked jurisdiction because the petitioner challenged his removal order).[4]

Further, Petitioner plainly challenges his removal order when he claims that he did not have a master hearing before the immigration judge ordered him removed.  And clearly, his motion to terminate removal proceedings challenges the ultimate removal order.[5]  In the same vein, he challenges the removal order when he alleges that he lacked an opportunity to claim asylum and thereby attempt to forestall the order of removal.[6]

The Court should dismiss these claims for lack of subject matter jurisdiction.

---

[4] *See also Hidalgo-Mejia v. Pitts*, 343 F. Supp. 3d 667, 673 (W.D. Tex. 2018) (observing that "judicial review under the APA is not available when 'statutes preclude judicial review' or 'agency action is committed to agency discretion by law.' 5 U.S.C. § 701(a)."). *Pinto-Barrera v. Sifuentez*, 2018 WL 6027114, at *2 (W.D. Tex. Nov. 16, 2018) ("The Court cannot 'hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien.' . . . Further, this prohibition also strips the Court of jurisdiction to hear Petitioner's claims under the APA.").

[5] *See Benitez-Garay v. Dep't of Homeland Sec.*, 2019 WL 542035, at *7 (W.D. Tex. Feb. 8, 2019) (opining, where the petitioner claimed that an immigration judge denied his motion, that the claim raised an issue "upon which the validity of the order of removal is contingent and the relief sought would be clearly inconsistent with the order of removal.").

[6] *Sagatelian v. Acting Dir., U.S. Immigr. & Customs Enf't*, No. 0:25-CV-61141, 2025 WL 1663015, at *1 (S.D. Fla. June 11, 2025) (finding, where the petitioner claimed he did not have an opportunity to file an asylum application, that the court lacked subject matter jurisdiction to consider the claim).

## Recommendation

For reasons above, **IT IS RECOMMENDED** that Petitioner Jose Patricio-Morales's claim that his requests for bond were denied be **DENIED AND DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that Petitioner's remaining claims be **DENIED AND DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 29th day of April, 2026.


_____
Kayla Dye McClusky
United States Magistrate Judge

9